IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY


RONALD CLUTTER,

       Petitioner,

v.                                          Case No. 5:07-cv-00710

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

       Respondent.


**PROPOSED FINDINGS AND RECOMMENDATION**

      Pending is Respondent's Motion for Summary Judgment (# 15). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**PROCEDURAL HISTORY AND PETITIONER'S CLAIMS FOR RELIEF**

Petitioner's criminal proceedings

      On October 3, 2001, Petitioner was indicted by a Greenbrier County Grand Jury on 90 counts charging him with Sexual Abuse in the Third Degree; Sexual Abuse by a Parent, Guardian or Custodian; Intimidation of a Witness; Sexual Assault in the Third Degree; Incest; and Sexual Assault in the First Degree. (State v. Clutter, Case No. 01-F-84).  (# 15, Exs. 1 and 2).

On June 14, 2002, Petitioner pled guilty to two counts of Sexual Abuse by a Parent, Guardian or Custodian (Counts 6 and 66), one count of Incest (Count 42), and one count of misdemeanor Intimidation of a Witness (Count 11). (<u>Id.</u>, Ex. 2). By order entered November 21, 2002, the court sentenced Petitioner to consecutive sentences of 10 to 20 years on Counts 6 and 66, and 5 to 15 years on Count 42. Petitioner was further sentenced to serve one year in jail on Count 11, which was run concurrently with the sentences imposed on the other counts. (<u>Id.</u>)

<u>Petitioner's Greenbrier County habeas corpus petition</u>

On June 7, 2005, Petitioner, by counsel, filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Greenbrier County. (<u>Clutter v. McBride</u>, Case No. 05-C-71). (<u>Id.</u>, Ex. 5). In that petition, Petitioner asserted several claims, which included a claim of denial of right to an appeal, and a claim of ineffective assistance of counsel for failure to file an appeal. (<u>Id.</u>) Petitioner also raised other claims of ineffective assistance of counsel, and alleged that his guilty plea was involuntary. (<u>Id.</u>)

On July 28, 2006, the Circuit Court of Greenbrier County granted partial relief on Petitioner's state habeas corpus petition and re-sentenced Petitioner for purposes of re-starting the appeal period. (<u>Id.</u>, Ex. 6). The habeas court further found that Petitioner's other claims of ineffective assistance of counsel

lacked merit.  (<u>Id.</u>)[1]

### Petitioner's petition for appeal to the SCAWV

On February 20, 2007, Petitioner, by counsel, filed a Petition for Appeal in the SCAWV, asserting the following grounds for relief:

> 1.   Did the lower court commit error in allowing a non-victim to testify as a victim about an offense that was dismissed?
>
> 2.   Did the lower court commit error in the habeas corpus decision by failing to find that trial counsel was ineffective during the sentencing hearing to the prejudice of Petitioner.

(<u>Id.</u>, Ex. 4).  The SCAWV refused the Petition for Appeal on June 5, 2007.  (<u>Id.</u>)

### The instant federal petition

Petitioner filed the instant petition under 28 U.S.C. § 2254 on November 7, 2007, asserting the following grounds for relief:

> 1.   Ineffective assistance of counsel.
>
> 2.   The Petitioner was refused the right to a direct appeal.

(# 2).  Petitioner also filed a Memorandum of Law in support of his section 2254 petition.  (# 3).

On January 22, 2008, Respondent filed a Motion for Summary Judgment, with an accompanying Memorandum of Law and exhibits (## 15 and 16).

---

[1]   It appears that the state habeas court did not address Petitioner's claim that his guilty plea was involuntary.

3

On January 31, 2008, Petitioner filed a Memorandum of Law in Rebuttal to Respondent's Motion for Summary Judgment, which consists of the brief in support of his direct appeal. (# 17). Respondent did not file a reply. The matter is now ripe for determination.

## FACTUAL BACKGROUND AND TESTIMONY

This description of the factual background is derived from Petitioner's Petition for Appeal filed in the SCAWV:

This case arose out of a custody dispute between Petitioner and his ex-wife, Stacy Clutter, and related abuse and neglect proceedings concerning their children. After Petitioner was awarded temporary custody of their children, Stacy Clutter made allegations that Petitioner had abused her and certain of the children. The West Virginia Department of Health and Human Resources removed the children and placed them in foster care, and filed an abuse and neglect petition against Petitioner.

During a hearing in the abuse and neglect proceedings, Petitioner was arrested on charges of sexual assault in the third degree, pertaining to sexual activity between Petitioner and Stacy, when she was 12 years old. Petitioner has been incarcerated since his arrest.

On October 2, 2001, Petitioner was indicted on 89 counts of various sex crimes and one count of misdemeanor intimidation of a witness. After being found mentally competent, Petitioner pled guilty to the charges as discussed in the previous section. The

4

charges to which Petitioner pled guilty involved alleged victims, C.H., J.A.C. and M.C., all of whom are now adults.

According to Petitioner's Petition for Appeal, following his guilty plea, Petitioner was referred for sexual offender treatment evaluation by Susan McQuaide,[2] the Director of Sexual Assault Services for Family Service of Kanawha Valley ("FSKV"). Ms. McQuaide prepared a report, which will be further discussed below.

A sentencing hearing was conducted on November 21, 2002. At the hearing, Petitioner called Reverend Merill Kopp and Diana Clutter as witnesses. Reverend Kopp testified that Petitioner had been receptive to the counseling he had been providing him while in jail. Diana Clutter, Petitioner's sister-in-law, testified that Petitioner and his siblings had been sexually abused by their father, and that the abuse had a profound impact on each of them. Ms. Clutter further offered to house Petitioner and transport him to therapy, if he were released on probation.

Petitioner's counsel also submitted Ms. McQuaide's sexual offender evaluation to the court. The report indicated that Petitioner was a poor candidate for probation.

The State called Ms. McQuaide as a witness at the sentencing hearing. Ms. McQuaide testified that Petitioner had admitted certain improper sexual acts consistent with his plea agreement;

---

[2] The record contains incorrect spellings of this woman's last name. The undersigned's staff has reviewed FSKV's website and confirmed that this is the proper spelling of Ms. McQuaide's name.

however, she felt that Petitioner had minimized his conduct, and that he failed to fully appreciate the wrongfulness of his conduct. In particular, Petitioner admitted to having sexually abused the three victims involved in his counts of conviction; however, Ms. McQuaide had obtained information concerning at least four other victims, which Petitioner did not acknowledge.

Ms. McQuaide further testified that Petitioner's low IQ test score was a sign that he was malingering and that he would not attempt true rehabilitation. Ms. McQuaide further testified that, based upon information she received from Stacy Clutter, asserting that Petitioner had lost interest in adult sexual relations after their marriage, she was concerned that Petitioner tended toward an exclusive type of pedophelia, which was more difficult to treat.

The State also presented testimony from Petitioner's ex-wife who, at that time, went by the name Stacy Walkup. Petitioner's counsel objected to Ms. Walkup's testimony on the basis that she was not a victim of any of the crimes of conviction. The trial court overruled the objection, however, finding that Ms. Walkup's testimony was admissible as relevant conduct.

Ms. Walkup testified that she first engaged in sexual relations with Petitioner when she was 12 years old, when she was babysitting for Petitioner's two children. Petitioner was about 32 years old, and was married to another woman at that time. Ms. Walkup testified about the sexual activities that Petitioner engaged in with her, which were similar to some of the allegations

of abuse made by the child victims in his counts of conviction.

Petitioner and Ms. Walkup were married in 1991, when she was 15 years old, and they had one son together.  They divorced in 2000.  Ms. Walkup's disdain for Petitioner was evident during her testimony.

After hearing this testimony, the trial court made the following findings:

> It's obvious that you are the beneficiary of a very favorable plea agreement with the State and it's because of that, that you're not looking at having to spend the rest of your life and then a couple more lives in prison because of the history here.  And I'm convinced that if the State had elected to proceed against you on these other eighty some counts, they could have  -- the State could have proved beyond a reasonable doubt almost all of them.

> And it's obvious to me that you are not eligible for consideration of probation under the statute 62-12-2(e) and I reject the notion that you are ineligible because you are -- have been unable to make bond and because you don't have the money or the funds for that.

> It's apparent from the evaluation that your attorney set up for you that you're not eligible on your own right that you're far from being close to coming to grips with your history and what you yourself can only be accountable for.

> * * *

> I was inclined, based upon my examination of the sentence report, to give you the benefit of concurrent sentences on some of these but after having thought more about it and after having heard the testimony of Ms. McQua[i]de as well as the testimony of the victims and the argument on both sides, it's the judgment of the Court that as to Count 6, 66 and 42 that they each be ordered to run consecutively.

> * * *

It's also my judgment that your are in obvious need
of correctional treatment and to run these concurrently
would unduly depreciate the seriousness of your offenses
as well as unduly depreciate the significance of the harm
you have inflicted upon your victims.

(# 15, Ex. 7 at 81-83).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the

Anti-terrorism and Effective Death Penalty Act of 1996 (the

"AEDPA") provides:

An application for a writ of habeas corpus on behalf of
a person in custody pursuant to the judgment of a State
court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings
unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal Law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the United

States Supreme Court held that under the "contrary to" clause, a

federal habeas court may grant a writ of habeas corpus with respect

to claims adjudicated on the merits in state court only if (1) the

state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law, or (2) if the state court

decides a case differently from the Supreme Court on a set of

materially indistinguishable facts.  The Court went on to note that

8

under the "unreasonable application" test, a federal habeas court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. <u>Id.</u> at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. <u>See</u>, <i>e.g.</i>, <u>Blackledge v. Allison</u>, 431 U.S. 63, 81 (1977); <u>Maynard v. Dixon</u>, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.). The United States Supreme Court has recognized the appropriateness of Rule 56 motions for summary judgment in habeas corpus proceedings. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 (1977).

## ANALYSIS

### A.   Ground Two of Petitioner's federal petition is moot.

In Ground Two of his federal petition, Petitioner alleges that he was refused the right to a direct appeal. (# 2 at 6). However, in light of the Circuit Court of Greenbrier County's action in re-sentencing Petitioner in order to re-start the time period for filing a petition for appeal, and Petitioner's subsequent filing of a petition for appeal in the SCAWV, this issue is rendered moot. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that this issue is moot, that Petitioner is not entitled to habeas corpus relief on this basis, and that Respondent is entitled to judgment as a matter of law on this claim.

### B.   Ground One - Ineffective assistance of counsel claims.

In Ground One of his federal habeas petition, Petitioner asserts that his trial counsel, Jeffrey Rodgers, refused to call certain witnesses to testify on Petitioner's behalf at his sentencing hearing, and that Mr. Rodgers did not effectively cross-examine the State's witnesses at the sentencing. (# 2 at 5).

As noted in his Memorandum of Law in support of his section 2254 petition, Petitioner contends that his trial counsel was ineffective in countering Ms. McQuaide and Ms. Walkup's damaging testimony. (# 3 at 4). During his state court habeas corpus proceeding, Petitioner testified that he felt he was wrongly portrayed as an exclusive pedophile, and felt that was the reason the court denied him probation and entry into a rehabilitation

10

program.   (<u>Id.</u>)   On this issue, Petitioner's Memorandum of Law states:

> Specifically, Petitioner testified at the habeas hearing, held on May 19, 2006, that he was married to Stacy Clutter for almost ten years.  During that time, they conceived a child together.  Also during that ten-year period, Stacy Clutter suffered two miscarriages. Petitioner further testified at the habeas hearing after his divorce from Stacy Clutter and prior to being charged, he was engaged to be married to a twenty-nine year old woman by the name of Connie McClung.  Petitioner testified that his trial counsel knew of this information, but failed to utilize it at sentencing.

(<u>Id.</u>)

Petitioner further asserts that there were other victims present at his sentencing who would have testified that they hoped Petitioner would receive probation.   His Memorandum of Law addresses this issue as follows:

> Petitioner also complained in his writ of habeas corpus action that his trial counsel failed to call certain witnesses who were present and willing to testify.  Petitioner introduced the affidavit of [J.F.]. [J.F.] states:

> > I was at the sentencing of . . . [Petitioner] . . . on November 21 . . . Prior to this time, I had contacted [C.H.] and [M.K.C.].  We were all going to testify that Ronnie Clutter should not go to jail, but should receive help.  Although what he did was wrong, we all cared for him.  All of us were at the hearing, ready to testify on Ronnie's behalf . . . [Petitioner's] . . . [trial attorney] . . . did not allow us to even go into the court room.  It was my understanding that the only witnesses at sentencing were Stacy Clutter and Susan McQua[i]de. [C.H.] and [M.K.C.] were victims in counts . . . [Petitioner] . . . pleaded guilty to.  Stacy was extremely mad at . . . [Petitioner] . . . for turning her into Child Protective

Services.

Affidavit of [J.F.].

The lower court not only failed to hear evidence from victims who appeared at the November 21, 2002, sentencing, but allowed a non-victim, Stacy Clutter, to testify.  Trial counsel did object to this evidence because all counts pertaining to Stacy Clutter had been dismissed by the State as provided for by the plea agreement.

The testimony of Stacy Clutter directly addressed her allegations and how she was impacted as a victim. She described the type of sex acts engaged in, how she felt at the time, and how it affected her life and her way of thinking.  The lower court commented later that this testimony negatively impacted how he perceived Petitioner.

Trial counsel did little beyond objecting to this evidence.  Trial counsel also did not use the opportunity to rebut assertions that Petitioner had lost interest in normal adult relations.

(Id. at 4-5).

Petitioner's trial counsel, Jeffrey Rodgers, testified at Petitioner's state habeas corpus hearing.  He stated that, after obtaining a favorable plea agreement, his sole focus at sentencing was to get Petitioner sentenced to probation and get him into a treatment program.  (# 15, Ex. 8 at 57-58).  Mr. Rodgers further testified that he and the prosecutor had agreed to a proffer to the court that the three victims of Petitioner's counts of conviction would testify that they wanted Petitioner to be able to get treatment, instead of going to prison.  He further stated that, at that point, he made the strategic decision not to call the victims as witnesses, so as to avoid their cross-examination by the

12

prosecutor.  (<u>Id.</u> at 65-66).

Despite re-sentencing Petitioner in order to allow a new appeal period, the state habeas court also addressed Petitioner's claims of ineffective assistance of counsel in a written order entered on July 28, 2006.  In the order, the court first addressed the correct standard of review to be applied to ineffective assistance of counsel claims, as set forth in the United States Supreme Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant was provided inadequate assistance of counsel.  The first prong is competence; Petitioner must show that the representation fell below an objective standard of reasonableness.  466 U.S. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  <u>Id.</u> at 688-89.

> In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Id.</u> at 690.

13

The second prong is prejudice; "[Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. The AEDPA "adds a layer of respect for a state court's application of the legal standard." <u>Holman v. Gilmore</u>, 126 F.3d 876, 881 (7th Cir. 1997). The SCAWV adopted the <u>Strickland</u> standard in its decision in <u>State v. Miller</u>, 459 S.E.2d 114 (W. Va. 1995).

Using the <u>Strickland/Miller</u> standard, the state habeas court made the following findings:

> Therefore, this Court **FINDS** that Petitioner has failed to prove and establish that he received ineffective assistance of counsel as required by <u>Strickland/Miller</u> standard. More specifically, this Court finds that Petitioner has not shown that counsel's performance was deficient under an objective standard of reasonableness, nor that there was a reasonable probability that, but for counsel's unprofessional errors alleged, the result of the proceedings would have been different. The record further demonstrates that the challenged performance of counsel involved strategy, tactics or arguable courses of action, and as such, are deemed effective assistance of counsel inasmuch as it cannot be demonstrated that no reasonably-qualified defense attorney would have so acted in defense of the accused. This Court **FINDS** that the choices made by trial counsel were reasonable and were strategic considerations.

(# 15, Ex. 6 at 8). The state habeas court further found that Petitioner had not demonstrated the requisite prejudice under <u>Strickland</u>. (<u>Id.</u>)

Respondent asserts that Petitioner has not demonstrated either that Mr. Rodger's performance was ineffective, or that he was prejudiced thereby. (# 16 at 9). Respondent further asserts that Petitioner has not shown that the state court's rulings were contrary to or an unreasonable application of controlling federal precedent. (Id.) Respondent further states:

> Despite the holding by the Supreme Court that the Sixth Amendment right to effective assistance of counsel applies to all critical stages of the proceedings and sentencing is a critical stage, the Supreme Court has nonetheless declined to carve out a standard for determining effective, or ineffective, assistance of counsel at an informal sentencing proceeding.

(Id.) Respondent further states that some of the Circuit Courts of Appeals have established that the inquiry to make in a non-capital sentencing is whether, absent counsel's unprofessional errors, the non-capital sentence would have been "significantly less harsh." See, e.g., Daniel v. Cockrell, 283 F.3d 697 (5th Cir. 2002). However, Respondent also notes that the Supreme Court has cast doubt on the "significantly less harsh" standard. See Glover v. United States, 531 U.S. 198 (2001). Thus, Respondent asserts that there is no clearly-established federal precedent concerning a claim of ineffective assistance of counsel during a non-capital sentencing proceeding, and that granting any habeas relief on such a claim would create a new rule of law and contravene the federal habeas corpus statute. (Id. at 10-12).

Nevertheless, Respondent further addresses Petitioner's claim and states that, using the "significantly less harsh" standard,

Petitioner cannot show the requisite prejudice to obtain habeas corpus relief based on his counsel's performance at his sentencing. In support of his argument, Respondent states:

> [B]ecause Petitioner confessed, pled guilty and was sentenced within statutory limits a showing of prejudice is nearly impossible to achieve even with a showing of incompetence. * * * The outcome in this case was never in question because Petitioner pled guilty.  The only alternative outcome was for Petitioner to either receive probation or concurrent sentences.
>
> Using the "significantly less harsh" (see Cockrell supra) standard as a guide, Petitioner would be required to show that if the subject witnesses had testified (the ones turned away by trial counsel), or that the challenged witnesses had not testified (the victim of uncharged acts), the sentence imposed by the state court would not be as severe.  In order to make such a showing Petitioner would be required to overcome the fact that the record and sentencing hearing was replete with evidence that he was a pathological child sexual predator of immense proportions.  Petitioner would also be required to overcome the testimony of the State's expert witness who testified extensively that Petitioner was the worst sort of pedophile.  The sum of the State's expert witness's testimony was that Petitioner was so profoundly and irreparably distorted that it was unlikely he could ever be rehabilitated.  The State's expert testified that Petitioner did not see the wrongness of his actions because he considered the molestation to be consensual sex.  (Resp't Ex. 7 at 46, 47.)  The expert also cited Petitioner's "incredibl[y] long history of offending over a long period of time . . ."  (Id. at 41.)  Even the witnesses who testified on Petitioner's behalf gave less than a ringing endorsement of Petitioner's chances at rehabilitation.

(Id. at 13-14).  Respondent further argues that, although the trial court stated that he was inclined to give Petitioner the benefit of concurrent sentences, the record and evidence, taken as a whole, influenced him otherwise.  It was within the trial judge's discretion to run the sentences consecutively, and Respondent

contends that Petitioner has not demonstrated that the additional victim testimony or any other action taken by his counsel would have altered that decision. (Id. at 15-16).

Petitioner filed a Response to Respondent's Motion for Summary Judgment on January 31, 2008. (# 17). In that document, Petitioner raises for the first time in this federal habeas proceeding an issue concerning Mr. Rodger's alleged guarantee that he would receive probation, and a claim that his plea was based upon that assumption and, therefore, was not voluntary. (Id. at 2-3). Petitioner asserted a claim that his plea agreement was involuntary in his state habeas petition, but then abandoned that claim when he filed his direct appeal and his federal habeas petition. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that this particular claim is unexhausted, and may not be addressed on the merits herein. See 28 U.S.C. § 2254 (b)(1)(A). In his Response, Petitioner also generally asserts that his sentence was overly harsh, and that his "rights were violated when he was sentenced due to unfair circumstances and his own attorney's mistruths." (Id. at 2-3).

The testimony of Ms. McQuaide and Ms. Walkup at Petitioner's sentencing was damaging to Petitioner's hope to receive probation. However, Mr. Rodgers's objection to Ms. Walkup's testimony was overruled by the trial court. Therefore, he was limited to trying to defuse her testimony on cross-examination. Furthermore, based upon the prosecutor's agreement to proffer that the other victims

would testify that they wanted Petitioner to receive treatment instead of incarceration, Mr. Rodgers made the strategic decision not to call them as witnesses so as not to subject them to cross-examination.

The United States Court of Appeals for the Fourth Circuit has held that ineffective assistance of counsel may not be established by questioning counsel's choice of strategy. See Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991); See also Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). "In defining the required showing under the first prong of the Strickland analysis, the United State[s] Supreme Court cautioned that a counsel's conduct does not constitute ineffectiveness if it may be construed as the result of 'tactical decisions.' Strickland, 466 U.S. at 689.   Thus, Mr. Rodgers' strategic decisions are not subject to hindsight.

The undersigned proposes that the presiding District Judge **FIND** that, under the totality of the circumstances, Mr. Rodger's conduct was not outside the broad range of professionally competent assistance and did not fall below an objective standard of reasonableness.   The undersigned further proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that Mr. Rodgers was constitutionally ineffective.   Finally, the undersigned proposes that the presiding District Judge **FIND** that the state court's decision denying habeas corpus relief on this basis was neither contrary to, nor an unreasonable application of

18

clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (# 15) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984).  Copies of such objections shall be served on the opposing party, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

_____June 17, 2008_____
              Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

20